UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X    Docket No.
XIZMO MEDIA PRODUCTIONS LLC

        Plaintiff,

-against-   **COMPLAINT**

CITY OF NEW YORK,

        Defendant.
------------------------------------------------------X

Plaintiff Xizmo Media Productions LLC, by and through its undersigned counsel, Muchmore & Associates PLLC, as and for its Complaint herein against Defendant City of New York, alleges the following:

## Introduction

1. The instant action presents a challenge, *prima facie* and as applied, to the constitutionality of section 10-126(c) of the New York City Avigation Law (N.Y.C. Administrative Code 10-126, *et seq.,* hereinafter, the "Avigation Law") under Article VI, clause 2 of the United States Constitution and the First Amendment to the United States Constitution. Section 10-126(c) of the Avigation Law (hereinafter, the "UAV Ban") effectively imposes a complete ban on the operation of unmanned aerial vehicles ("UAV's" or "drones") within the limits of New York City. Plaintiff maintains a film support business in New York City, which would use drones for purposes of filming pursuant to permits and/or waivers granted by the Federal Aviation Administration, were it not for conflicting provisions of the Avigation Law, which fail to recognize federally granted waivers and permits. This action seeks declaratory and injunctive relief determining the UAV Ban to be unconstitutional and enjoining further enforcement of the UAV Ban in circumstances where the Federal Aviation Administration has authorization a drone launch.

## Jurisdiction

2.      This Court has subject matter jurisdiction of this dispute pursuant to 28 U.S.C. Sec. 1331 and 1343(3) and (4), as this action concerns rights afforded under the United States Constitution. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. 2201 and 2202 and Fed. R. Civ. Proc. 57.

## Venue

3.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. 1391(b)(2) on the basis that a substantial part of the events or omissions giving rise to the claim occurred in Kings County, New York.

## Parties

4.      Plaintiff Xizmo Media Productions LLC ("Xizmo" of "Plaintiff") is a domestic limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 67 West Street, Suite 714, Brooklyn, New York 11222.

5.      Defendant City of New York is a municipal corporation organized and existing under the laws of the State of New York and the New York City Charter.

## General Provisions of the Avigation Law

6.      The Avigation Law defines an "aircraft" as "any contrivance, now or hereafter invented for avigation or flight in the air, including a captive balloon, except a parachute or other contrivance designed for use, and carried primarily as safety equipment." N.YC. Admin Code Sec. 10-126(a)(1).

7.      The Avigation Law defines a "place of landing" as "any authorized airport, aircraft landing site, sky port or seaplane base in the port of New York or in the limits of the city." N.YC. Admin Code Sec. 10-126(a)(2).

8. The Avigation Law defines "limits of the city" as "the water, waterways and land under the jurisdiction of the city and the air space above same." N.Y.C. Admin Code Sec. 10-126(a)(3).

9. The Avigation law defines "avigate" as "to pilot, steer, direct, fly or manage an aircraft in or through the air, whether controlled from the ground or otherwise." N.Y.C. Admin Code Sec. 10-126(a)(4).

10. The Avigation Law defines a "person" as "a natural person, co-partnership, firm, company, association, joint stock association, corporation or other like organization." N.Y.C. Admin Code Sec. 10-126(a)(6).

11. The Avigation Law at N.Y.C. Admin Code 10-126(c) provides:

> Take offs and landings. It shall be unlawful for any person avigating an aircraft to take off or land, except in an emergency, at any place within the limits of the city other than places of landing designated by the department of transportation or the port of New York authority.

12. Section 10-126(c) of the N.Y.C. Administrative Code does not provide a permitting process for commercial UAV operation nor does it purport to recognize any permits or waivers issued by the Federal Aviation Administration for federally licensed professionals to operate such vehicles.

13. Section 10-126(c) of the N.Y.C. Administrative Code is, for all practical purposes, a complete and total prohibition on the operation of UAV's at any location within the limits of New York City for any purposes whatsoever. Accordingly, Plaintiffs refer to this section of the Avigation Law as the "UAV Ban".

14. The "zero-tolerance" nature of the UAV Ban is clearly articulated on the Official Website of the City of New York, which provides:

> Call 911 to report a drone use in New York City.
> It is illegal to fly them [drones] in New York City.

### History and Relevant Provisions of Federal Law

15. The United States Government has exercised continual and exclusive sovereignty over the national airspace since the passage of the Air Commerce Act of 1926. *See* 49 U.S.C. 40103(a)(1).

16. The Federal Aviation Act was enacted in 1958 to "provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety, and to provide for the safe and efficient use of airspace by civil and military aircraft..." 48 U.S.C. 1301.

17. The Federal Aviation Act of 1958 created the Federal Aviation Administration ("FAA") to carry out the policy objectives of the legislation. The FAA has since exercised pervasive authority over the national airspace and the use of aircraft. The FAA is responsible for prescribing regulations for "navigating, protecting, and identifying aircraft", "protecting individuals and property on the ground", and "using the navigable airspace efficiently." 49 U.S.C. 40103(b)(2).

18. 49 U.S.C. 40103(a)(1) states clearly: "The United States Government has <u>exclusive</u> sovereignty of airspace of the United States." (emphasis added)

19. 49 U.S.C. 40103(a)(2) provides: "A citizen of the United States has a public right of transit through the navigable airspace." The public right of navigation derives from the Commerce Clause[1] and is firmly rooted in the Nation's history, traditions, and constitutional jurisprudence. 20. The United States Congress has responded to the proliferation of UAV technology, passing the FAA Modernization and Reform Act of 2012 ("FMRA") to regulate and integrate recent advancements in aviation.

21. Section 332 of the FMRA, entitled "Integration of Civil Unmanned Aircraft Systems Into National Airspace System", directed the FAA to develop a plan for "the safe

---

[1] *See e.g. United States v. Appalachian Electric Power Co.,* 311 U.S. 377 (1940).

integration of civil unmanned aircraft systems into the national airspace as soon as practicable, but not later than September 30, 2015." Section 332(3).

22. Section 332(1)(G) of the FMRA directed the FAA to develop a plan with recommendations for the "establishment of a process to develop certification, flight standards, and air traffic requirements for civil unmanned aircraft systems..."

23. The FAA responded with regulations, *inter alia,* for small, unmanned aircraft, including 14 CFR Part 107.

24. 14 CFR Part 107, Subpart C sets forth a rigid and comprehensive application process by which qualified individuals can obtain permits for the limited operation of small, unmanned aircraft systems[2] (hereinafter, "FAA Permit"). FAA Permit applicants must demonstrate their aeronautical knowledge by passing an initial aeronautical knowledge test covering twelve distinct areas of knowledge related to the safe operation of UAV's. 14 CFR Part 107.73(a). Thereafter, FAA permit holders are required to complete a recurrent aeronautical knowledge test every 24 months. 14 CFR Part 107.65. 25. FAA regulations at 14 CFR 107.200 also establish a waiver policy whereby the FAA "may issue a certificate of waiver authorizing a deviation from any regulation specified in 107.205 if the Administrator finds that a proposed small UAS operation can be safely conducted under the terms of that certificate of waiver." 14 CFR 107.200(a).

26. In addition to the foregoing, the FAA regulations at 14 CFR 107.200 prescribe regulations concerning every facet of UAV operation, evincing an intent on the part of Congress to fully occupy the field of UAV regulation.

27. Such FAA regulations are rigorously enforced by the federal government. In 2017,

---

[2] FAA regulations define "small unmanned aircraft" as "an unmanned aircraft weighing less than 55 pounds…" 14 CFR 107.3. The instant action is intended to apply only to such. For purposes of this pleading, "UAV's" or "drones" are synonymous with "small unmanned aircraft" as such term is defined by federal law.

the FAA imposed a $200,000.00 fine, its largest to date, on a commercial drone operator for illegal UAV flights in New York City and Chicago.

### Relevant Precedent

28. Modern developments in the law, both at the state and federal level, offer a framework for assessing the constitutionality of New York City's UAV Ban.

29. In *People v. Santoriello,* N.Y.S.2d 539 (N.Y. Crim. Ct., 1999), Section 10-126(d)(1) of the Avigation Law was found to be preempted by various provisions of title 49 of the U.S. Code. Citing 49 U.S.C. 40103(a)(1) (providing that "the United States Government has exclusive sovereignty of airspace of the United States."), 49 U.S.C. 40102(30) (defining "navigable airspace" under federal law), and 49 U.S.C. 40103(a)(2) (establishing citizens' "public right of transit through the navigable airspace."), the *Santoriello* court found that the legislative intent of the Act [the Federal Aviation Act] was to preserve the rights of the citizens of the United States and set nation-wide standards for the use of the navigable airspace. Furthermore, the fact that that the defendant in *Santoriello* had obtained a "Certificate of Waiver or Authorization" from the FAA expressly allowing him to engage in the precise conduct purportedly outlawed by the Avigation Law led the court to conclude:

> This court sees no escape from the conclusion that however salutary and well-intentioned the Code may be, it does in fact entirely prohibit, not regulate, what the federal government has authorized. Therefore, Administrative Code 10-126(d)(1) is unconstitutional on its face. *Id.*

30. In *Singer v. City of Newton*, 284 F. Supp. 3d 125 (D. Mass. 2017), a federal court in Massachusetts held that a municipal UAV ordinance was conflict preempted. The ordinance at issue in *Singer* was a multipronged regulatory scheme that, taken together, effected a complete ban on UAV operation within the City of Newton. Analyzing each prong separately, the *Singer* court found: (1) the ordinance's drone registration requirement conflicts with the FAA's exclusive

regulatory authority for the registration of pilotless aircraft; (2) the ordinance's altitude restriction conflicts with the FAA's exclusive regulatory authority over the navigable airspace; (3) the ordinance's prohibition on pilotless flight over public property without the city's consent conflicts with the FAA's exclusive regulatory authority over the navigable airspace; and (4) the ordinance's prohibition on UAV operation outside the line of sight of the operator conflicts with the FAA's specific guidelines for visual observers of UAV's as well as the FAA's policy of issuing waivers of such guidelines to qualified applicants.

### **Applicability of the Avigation Law to Plaintiff**

31. Plaintiff is a full-service production company specializing in aerial cinematography. It is one of many film support companies clustered in Greenpoint, Brooklyn.

32. The film industry is a historical pillar of the New York economy. According to a 2000 study prepared at the request of the New York City Comptroller's Office, the visual media industry accounts for over 170,000 jobs in New York City and contributes about $10.0 billion to the local economy. That same study recommends that "New York should take steps to ensure the continued growth and success" of this industry.

33. Xizmo is one of hundreds of companies that rely on the nationally uniform regulation of U.S. airspace and aircraft to engage in interstate commerce.

34. Xizmo's co-founder and head of aerial operations is a federally licensed private pilot and Xizmo only conducts aerial operations with the supervision of similarly qualified professionals.

35. In 2016, Xizmo obtained a remote pilot certification pursuant to 14 CFR 107, Subpart C.

36. In 2017, Xizmo obtained an FAA waiver exempting it from federal prohibitions on

nighttime UAV operation. This waiver provides:

> The FAA's Flight Standards Service has reviewed your application to ensure compliance with the requirements of 14 CFR 107.200. The Administrator finds that the proposed sUAS [small, unmanned aircraft systems] operation can be conducted safely under the provisions of this Certificate of Waiver (Waiver) as listed below, because you have established adequate mitigations for risks involved with operating your sUAS in the manner you described. <u>Adherence to the provisions of this Waiver establishes the required level of safety within the national airspace system</u>. (emphasis added).

37. In 2019, Xizmo obtained an FAA waiver exempting it from federal prohibitions on UAV operation over human beings. This waiver provides:

> 14 CFR 107.39(a), Operations over human beings is waived to allow sUAS operations over human beings who are not direct participants, necessary for the safe operation of the small unmanned aircraft.

38. In 2018, Xizmo obtained FAA permits to operate small UAV's in class B airspace under the jurisdiction of New York's Kennedy Airport Control and LaGuardia Airport Traffic Control.

39. Plaintiff has, on multiple occasions, had its aerial productions shut down by the New York City Police Department despite the certificates and waivers it has obtained from the FAA.

40. Upon information and belief, the UAV Ban has caused Plaintiffs hundreds of thousands of dollars in damages.

## AS AND FOR A FIRST CAUSE OF ACTION

### (PREEMPTION)

41. Plaintiff repeats and realleges the allegations above with the same force and effect as if set forth at length herein.

42. Plaintiff is a member of a class for whose benefit 49 U.S.C. 40103 *et seq.,* the FMRA, and 14 CFR Part 107 were enacted.

43. Federal laws concerning the navigable airspace and FAA regulation thereof create express and implied rights in Plaintiff's favor.

44. The UAV Ban violates Plaintiff's rights under federal law and violates the Supremacy Clause of the United States Constitution because:

   a. Congress has expressly empowered the FAA to regulate civil unmanned aircraft;

   b. Congress has expressly instructed the FAA to integrate civil unmanned aircraft into the national airspace system;

   c. By effectively outlawing the use of UAV's at any place within the limits of New York City, the UAV Ban frustrates the clearly expressed will of Congress;

   d. The FAA exercises its regulatory authority over UAV's and their operation on a uniform, comprehensive, and nationwide basis;

   e. The FAA exercises authority over the navigable airspace within the limits of New York City;

   f. The City adheres to a policy and practice of imposing fines on UAV operators and encouraging citizens to report the use of UAV's to law enforcement irrespective of the permits and/or waivers such operators may have obtained from the FAA and in clear conflict of Plaintiff's lawful operation of UAV's under 14 CFR Part 107;

   g. The UAV Ban conflicts with FAA control of Class B airspace, a portion of the national airspace for which Plaintiff has obtained express authority from the FAA to operate UAV's;

   h. The UAV Ban conflicts with the FAA's power to grant, or Plaintiff's freedom to exercise, remote pilot certifications under 14 CFR Part 107, Subpart C;

   i. The UAV Ban conflicts with the FAA's power to grant, or Plaintiff's freedom to exercise, waivers under 14 CFR Part 107, Subpart D;

   j. The UAV Ban is substantially more onerous than federal regulation of UAV's;

   k. The UAV Ban violates Plaintiff's federal right of navigation;

   l. Federal regulation of aircraft and airspace is pervasive and occupies the entire field of law.

45. The UAV Ban has caused and will continue to cause direct and substantial economic harm to the Plaintiff.

46. As a result of the foregoing, Plaintiff requests declaratory judgment establishing that the UAV Ban is unconstitutional on its face and/or as applied to Xizmo and similarly situated commercial operators and enjoining its enforcement to the extent it is found to be unconstitutional.

## AS AND FOR A SECOND CAUSE OF ACTION

### (FIRST AMENDMENT)

47. Plaintiff repeats and realleges the allegations above with the same force and effect as if set forth at length herein.

48. Plaintiff uses UAV's as a form of artistic expression.

49. The UAV Ban is, in effect, a complete injunction on constitutionally protected speech.

50. The UAV Ban burdens substantially more speech than necessary to serve a significant governmental interest.

51. The UAV Ban is not narrowly tailored and does not leave open alternative avenues of expression for aerial cinematographers.

52. The UAV Ban is an unreasonable prohibition on speech within a limited public forum and does not, in any way, further the federal government's stated objectives concerning integration of UAV's into the national airspace.

53. The UAV Ban is void for vagueness because it is facially inconsistent with FAA regulations and has not been modified since the invention of drones and the amendment of federal law to accommodate them.

54. The UAV Ban is void for vagueness because, despite being preempted by FAA

regulations, it does not address the legal consequence of FAA-granted permits or waivers.

55. Plaintiff is entitled to know what, if any, FAA certificates or waivers are recognized under New York law.

56. Plaintiff has invested substantial sums of money and effort in an enterprise that the UAV Ban purports to control.

57. The prospect of civil or criminal penalties under the UAV Ban poses a grave risk of reputational damage and economic harm to Plaintiff and similarly situated UAV operators.

58. As a result, the UAV Ban has created a chilling effect that inhibits Plaintiff's exercise of constitutionally protected modes of artistic expression.

59. To the extent the UAV Ban purports to prohibit Plaintiff from operating a UAV within the limits of New York City, it violates the First and Amendment of the United States Constitution. 42 U.S.C. Sec. 1983 authorizes the Plaintiff to seek relief from this Court.

60. As a result of the foregoing, Plaintiff requests declaratory judgment establishing that the UAV Ban is unconstitutional on its face and/or as applied to Plaintiff and similarly situated UAV operators and enjoining its enforcement to the extent it is found to be unconstitutional.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff Xizmo Media Productions LLC respectfully requests that this Court issue an Order granting relief as follows:

   a. Declaring that N.Y.C. Admin Code 10-126(c) is preempted by federal law, and thus violates the Supremacy Clause of the United States Constitution;

   b. Declaring that N.Y.C. Admin Code 10-126(c) violates the First Amendment;

   c. Declaring that the City of New York must recognize Remote Pilot Certificates issued by the Federal Aviation Administration and permit the limited use of

      UAV's as set forth in such certificates;

d.  Declaring that the City of New York must recognize Certificates of Waiver issued by the Federal Aviation Administration and permit the limited use of UAV's as set forth in such waivers;

e.  Granting attorneys' fees pursuant to 42 U.S.C. 1988; and

f.  Granting such other and further relief as the court deems just and proper.

Dated: Brooklyn, New York
      April 20, 2021

                                  **MUCHMORE & ASSOCIATES PLLC**
                                  *Counsel for Plaintiff*

                                  By: /s/ Andrew Muchmore
                                      Andrew Muchmore, Esq. (AM 7852)
                                  84 Withers Street, 4th Flr.
                                  Brooklyn, NY 11211
                                  (917) 932-0299