UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
XIZMO MEDIA PRODUCTIONS LLC,

                                      Plaintiff,

    - against -

CITY OF NEW YORK,

                               Defendant(s).

-----------------------------------------------------------------------X

21-cv-2160 (ENV)(MMH)

**Date of Service**: September 13, 2021

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

GEORGIA M. PESATANA
Corporation Counsel of the
City of New York
Attorney for Defendant
100 Church Street
New York, New York 10007
Tel: (212) 356-1662

Sheryl Neufeld
Darren Trotter
Gati Dalal,
      *of Counsel.*

September 13, 2021

# **Table of Contents**

Table Of Authorities .................................................................................................. ii

    Cases .................................................................................................................... ii

    Statutes ................................................................................................................ iii

    Other Authorities ................................................................................................ iii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

STANDARD OF REVIEW ........................................................................................ 2

  A.  Plaintiff's Preemption Claim is Inadequately Plead ...................................... 3

    i.  The Federal Aviation Administration .................................................... 4

    ii.  Federal Aviation Administration Modernization and Reform Act of 2012 .................. 4

    iii.  Plaintiff has not Set Forth a Claim that the Avigation Law is Preempted Under the Doctrine of Field Preemption ................................................................... 5

    iv.  Plaintiff has not Set Forth a Claim that the Avigation Law is Preempted Under the Doctrine of Conflict Preemption ................................................................ 6

  B.  Plaintiff's First Amendment Claim Fails ...................................................... 10

    i.  Flying a UAV is not Inherently Expressive Conduct ............................... 10

    ii.  The Appropriate Standard of Review is Intermediate Scrutiny ................ 12

    iii.  Admin. Code § 10-126(c) Withstands Intermediate Scrutiny ................... 13

CONCLUSION ......................................................................................................... 16

# Table Of Authorities

**Page(s)**

**Cases**

Adderley v. Florida, 385 U.S. 39 (1966) ..................................................................13

Arizona v. United States, 567 U.S. 387 (2012) ..........................................................4

Ashcroft v. Iqbal, 556 U.S. 662 (2009).......................................................................2

Bell Atlantic v. Twombly, 550 U.S. 544 (2007)........................................................2, 3

Braniff Airways v. Nebraska State Bd. of Equalization & Assessment, 347 U.S.
    590, 74 S. Ct. 757, 98 L. Ed. 967 (1954)...........................................................4

Broadbent v. Allison, 155 F. Supp. 2d 520 (W.D.N.C. 2001)....................................2, 7

City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624 (1973)...........................4

Condor Corp. v. City of St. Paul, 912 F.2d 215 (8th Cir. 1990).....................................7

Cox v. Louisiana, 379 U.S. 536 (1965) .....................................................................13

Fifth Ave. Presbyterian Church v. City of N.Y., 2004 U.S. Dist. LEXIS 22185
    (S.D.N.Y. Oct. 28, 2004) ..............................................................................10, 11

Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses
    Comm'n, 681 F. Supp. 2d 182 (D. Conn. 2010) ...................................................7

Gustafson v. City of Lake Angelus, 76 F.3d 778 (6th Cir. 1996)....................................7

Heffron v. International Society for Krishna Consciousness, 452 U.S. 640 (1981)......................13

Lusk v. Vill. of Cold Spring, 475 F.3d 480 (2d Cir. 2007).............................................13

Madsen v. Women's Health Ctr., 512 U.S. 753 (1994) ..........................................12, 13

Maryland v. Louisiana, 451 U.S. 725 (1981) .............................................................3

Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)...............................15

People v. Santoriello, 180 Misc. 2d 533 (N.Y. Crim. Ct., 1999)..............................9, 10

Poulos v. New Hampshire, 345 U.S. 395 (1953)........................................................13

Regan v. Time, Inc., 468 U.S. 641 (1984)..................................................................15

Robar v. Vill. Of Potsdam Bd. Of Trs., 490 F. Supp. 3d 546 (N.D.N.Y 2020)............................10

Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357 (1997) ...............................................13

Singer v. City of Newton, 284 F. Supp. 3d 125 (D. Mass. 2017)....................................3, 4, 5, 8, 9

Spence v. Washington, 418 U.S. 405 (1974) ...................................................................................11

Tanis v. Township of Hampton, 306 N.J. Super. 588 (N.J. Super. Ct. App. Div.
    1997) ........................................................................................................................................7, 8

United States v. Albertini, 472 U.S. 675 (1985) .............................................................................15

Vincenty v. Bloomberg, 476 F.3d 74 (2d Cir. 2007)................................................................12, 14

Ward v. Rock Against Racism, 491 U.S. 781 (1989) .............................................12, 13, 14, 15

Young v. N.Y.C. Transit Auth., 903 F.2d 146 (2d Cir. 1990) ........................................................11

## Statutes

49 U.S.C. § 40103(a)(1).....................................................................................................................4

Avigation Law ............................................................................................................................ passim

FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95 § 332, 126 Stat.
    11, 73 (2012) (codified at 49 U.S.C. § 40101 note).....................................................................4

Federal Aviation Act .........................................................................................................................7

New York City Administrative Code § 10-126(c) ..................................................................... passim

New York City Administrative Code § 10-126(d)(1) ........................................................................9

## Other Authorities

14 C.F.R. part 107................................................................................................................4, 5, 6, 7, 9

14 CFR 107.200 .................................................................................................................................5

81 Fed. Reg. 42063 § (III)(K)(6) .............................................................................................6, 7, 14

Rule 12(b)(6)......................................................................................................................................2

United States Constitution First Amendment ............................................................................. passim

United States Constitution Supremacy Clause ................................................................................3

Defendant the City of New York ("City") submits this memorandum of law in support of its Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

This case stems from plaintiff's challenge to New York City Administrative Code ("Administrative Code") § 10-126(c) (the "Avigation Law"), which deems it unlawful "for any person avigating an aircraft to take off or land, except in an emergency, at any place within the limits of the city other than places of landing designated by the department of transportation or the port of New York authority." Plaintiff, a Brooklyn based media production company that seeks to use unmanned aerial vehicles ("UAVs") in connection with filming, alleges that Administrative Code § 10-126(c) operates as a total ban on the use of UAVs and is therefore preempted by federal law under the doctrines of field and conflict preemption. Plaintiff also alleges that Administrative Code § 10-126(c) violates its First Amendment right to artistic expression. However, plaintiff has not plead either claim with the required degree of specificity and, as a result, the claims must be dismissed.

Plaintiff's preemption claim must be dismissed for two reasons. First, as the FAA has made clear, the federal regulatory scheme governing UAV use was never meant to preempt laws traditionally related to state and local police power, and plaintiff has not plead otherwise. As such, plaintiff's claim that the Avigation Law must be invalidated under the doctrine of field preemption fails as a matter of law. Second, plaintiff's claim that the Avigation Law is preempted under the doctrine of conflict preemption is inadequately plead as the federal regulatory scheme at issue herein does not regulate takeoff and landing sites, and plaintiffs have failed to allege otherwise in the complaint. As such, plaintiff has not successfully plead that the Avigation Law conflicts with federal regulations. Moreover, federal courts have repeatedly held that "deciding

whether to allow planes to land and takeoff from a certain location is a quintessential land use issue over which state and local governments possess near-plenary authority." Broadbent v. Allison, 155 F. Supp. 2d 520, 524 (W.D.N.C. 2001). Accordingly, the complaint fails to plausibly allege a conflict between the Avigation Law and the federal regulatory scheme governing UAVs.

Plaintiff's First Amendment claim must also be dismissed, as plaintiff has failed to plead a cognizable First Amendment claim. The regulated activity, use of UAVs, is not a recognized form of inherently expressive conduct subject to protection under the First Amendment because there is no intent by plaintiff to convey a particularized message (e.g. political, social, religious, etc.) through UAV use, and even if there was such an intent, that message would not be readily or clearly understood by those who viewed the conduct. However, even if the use of UAVs is found to be expressive conduct, the restrictions in Administrative Code § 10-126(c) survive intermediate scrutiny. A municipality may impose reasonable regulations governing the time, place, or manner of speech without impinging the First Amendment as long as the regulation is narrowly tailored to serve a significant government interest and leaves open alternative avenues for communication. Here, Administrative Code § 10-126(c) does not ban all use of UAVs in New York City. Instead, the law regulates where UAVs can safely take off and land within City limits in order to maintain the safety and security of the public. Furthermore, there are various other methods of artistic expression through cinematography available to plaintiff.

## ARGUMENT

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, so as to make a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a pleading must set forth "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

Here, relying solely on the facts presented in the Complaint, all claims against defendant must be dismissed.

## A.     Plaintiff's Preemption Claim is Inadequately Plead

The Supremacy Clause of the United States Constitution provides that federal laws are supreme. U.S. Const. art. VI, cl. 2. This requires that federal law preempt any conflicting state or local regulation. See Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch v. Maryland, 17 U.S. 316 (1819)). Courts, however, are "wary of invalidating laws in areas traditionally left to states unless the court is entirely convinced that Congress intended to override state regulation." See Singer v. City of Newton, 284 F. Supp. 3d 125, 128-129 (D. Mass. 2017) (citing Gregory v. Ashcroft, 501 U.S. 452, 460 (1991)). "In contrast, if a state government attempts to regulate an area traditionally occupied by the federal government, a court need not seek to avoid preemption." Id at 129 (citing United States v. Locke, 529 U.S. 89, 108 (2000)). "Neither of these circumstances requires that Congress explicitly have stated its purpose; '[t]he question, at bottom, is one of statutory intent.'" Id (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992)).

Where Congress has not expressly preempted an area of law, a court must determine whether a state or local law is preempted under the doctrines of conflict or field preemption.[1] Field preemption occurs in instances where Congress has created "'a framework of

---

[1] Here, there is no express preemption clause in the federal regulatory scheme at issue and plaintiff does not allege otherwise. See generally, Complaint.

3

regulation so pervasive…that Congress left no room for the States to supplement it.'" Arizona v. United States, 567 U.S. 387, 399 (2012) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Conflict preemption arises where "compliance with both federal and state regulations is a physical impossibility and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Arizona, 567 U.S. at 399-400 (cites and quotes omitted).

 i. The Federal Aviation Administration

 Congress has stated that "[t]he United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). However, "this declaration does not preclude states or municipalities from passing any valid aviation regulations, Braniff Airways v. Nebraska State Bd. of Equalization & Assessment, 347 U.S. 590, 595, 74 S. Ct. 757, 98 L. Ed. 967 (1954), but courts generally recognize that Congress extensively controls much of the field." Singer, 284 F. Supp. 3d at 129 (citing Chicago & S. Air Lines, Inc. v. Waterman Steamship Corp., 333 U.S. 103, 105, 107 (1948); United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 336 (1st Cir. 2003)) (emphasis in original). As such, if a municipality's use of its police power infringes on the federal government's regulation of aviation, the local law is preempted. City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 638-39 (1973).

 ii. Federal Aviation Administration Modernization and Reform Act of 2012

 In the Federal Aviation Administration ("FAA") Modernization and Reform Act of 2012, Congress directed the FAA to "develop a comprehensive plan to safely accelerate the integration of civil unmanned aircraft systems into the national airspace system." FAA Modernization and Reform Act of 2012, Pub. L. No. 112-95 § 332, 126 Stat. 11, 73 (2012) (codified at 49 U.S.C. § 40101 note). "Under this directive, the FAA promulgated 14 C.F.R. part

107, which declares that it 'applies to the registration, airman certification, and operation of civil small unmanned aircraft systems within the United States.'" See Singer, 284 F. Supp. 3d at 129 (citing 14 C.F.R. § 107.1(a)). "The rule requires, inter alia, that anyone controlling a small unmanned aircraft system register with the FAA, id. §§ 91.203, 107.13; and keep the aircraft within the visual line of sight of the operator or a designated visual observer, id. §§ 107.3, 107.31, and below an altitude of 400 feet above ground level or within a 400 foot radius of a structure, id. § 107.51(b)." Id at 129-130.

iii.    Plaintiff has not Set Forth a Claim that the Avigation Law is Preempted Under the Doctrine of Field Preemption

Plaintiff alleges that "the FAA regulations at 14 CFR 107.200 prescribe regulations concerning every facet of UAV operation, evincing an intent on the part of Congress to fully occupy the field of UAV regulation." Complaint ¶ 26. However, plaintiff has not sufficiently plead how that is the case, and even a cursory review of the precedent evaluating the preemptive effect of 14 C.F.R. part 107 upon which the complaint so heavily relies, see Complaint ¶ 30, demonstrates that Congress did not intend to occupy the entire field of UAV regulation. See Singer, 284 F. Supp. 3d at 130. Significantly, in Singer, a municipality passed an ordinance imposing various UAV operating prohibitions. Id. Plaintiff therein claimed that "because the federal government regulates unmanned aircraft and local aircraft operations, there is federal intent to occupy the field." Id. In rejecting this claim, the Singer court relied upon FAA statements that clearly demonstrated that the FAA "explicitly contemplate[d] state or local regulation of pilotless aircraft," defeating plaintiff's "argument that the whole field is exclusive to the federal government." Id.

The FAA statements relied upon by the Singer court are equally persuasive herein and provide, in relevant part, as follows:

> [C]ertain legal aspects concerning small [UAV] use may be best addressed at the State or local level. For example, State law and other legal protections for individual privacy may provide recourse for a person whose privacy may be affected through another person's use of a [UAV].
>
> . . . The Fact Sheet also summarizes the Federal responsibility for ensuring the safety of flight as well as the safety of people and property on the ground as a result of the operation of aircraft. Substantial air safety issues are implicated when State or local governments attempt to regulate the operation of aircraft in the national airspace. The Fact Sheet provides examples of State and local laws affecting [UAV] for which consultation with the FAA is recommended and those that are likely to fall within State and local government authority. For example, consultation with FAA is recommended when State or local governments enact operation [UAV] restrictions on flight altitude, flight paths; operational bans; or any regulation of the navigable airspace. The Fact Sheet also notes that laws traditionally related to State and local police power -- including land use, zoning, privacy, trespass, and law enforcement operations -- generally are not subject to Federal regulation.

81 Fed. Reg. 42063 § (III)(K)(6). As the FAA has made clear that 14 C.F.R. part 107 was not intended to preempt laws "traditionally related to State and local police power," plaintiff's claim that the Avigation Law, which addresses only non-emergency take-offs and landings in New York City, is preempted by federal regulation of UAVs under the doctrine of field preemption cannot proceed.

     iv.   <u>Plaintiff has not Set Forth a Claim that the Avigation Law is Preempted Under the Doctrine of Conflict Preemption</u>

Plaintiff also alleges that the Avigation Law conflicts with federal regulation as: (1) the City "imposes fines on UAV operators…irrespective of the permits and/or waivers such operators may have obtained from the FAA; (2) the "UAV Ban conflicts with FAA control of Class B airspace;" (3) the "UAV Ban conflicts with the FAA's power to grant…remote pilot certifications;" and (4) the "UAV Ban conflicts with the FAA's power to grant…waivers." Complaint ¶ 44. Each of these arguments is insufficiently plead.

As an initial matter, plaintiff's complaint grossly mischaracterizes the Avigation Law by framing it as a complete ban on the use of UAVs within City limits. Plaintiff's reading of the Avigation Law, however, is incorrect. Not only does the Avigation Law merely regulate where UAVs may take off and land, which the federal regulatory scheme does not regulate at all, but there are in fact approved take-off and landing sites within the City of New York.[2] See generally 14 C.F.R. part 107. As such, plaintiff has not sufficiently alleged that the Avigation Law conflicts with federal law. Moreover, laws concerning land use regulation—including takeoff and landing sites for aircraft—have been specifically recognized by the FAA as appropriate exercises of local regulation. 81 Fed. Reg. 42063 § (III)(K)(6). As such, when the true scope of the Avigation Law is considered, it is clear Administrative Code § 10-126(c) does not present a "conflict between a city's regulatory power over land use and the federal regulation of airspace." Condor Corp. v. City of St. Paul, 912 F.2d 215, 219 (8th Cir. 1990); see also, Goodspeed Airport, LLC v. E. Haddam Inland Wetlands & Watercourses Comm'n, 681 F. Supp. 2d 182, 205 (D. Conn. 2010) ("Nonetheless…examining courts have generally found that these laws regulating land use can co-exist with federal aviation law…"); Gustafson v. City of Lake Angelus, 76 F.3d 778, 784 (6th Cir. 1996) (finding the Federal Aviation Act did not preempt a municipality exercising its authority to regulate the creation of new airports because "the designation of plane landing . . . is a matter left primarily to local control," and noting that "[t]he FAA has acknowledged that land use matters within the federal aviation framework are intrinsically local"); Broadbent, 155 F. Supp. 2d at 524 ("deciding whether to allow planes to land and takeoff from a certain location is a quintessential land use issue over which state and local governments possess near-plenary authority"); Tanis v.

---

[2]     A     list     of     approved     take-off     and     landing     sites     can     be     found     here: https://www.nycgovparks.org/facilities/modelaircraftfields (last visited September 13, 2021)

Township of Hampton, 306 N.J. Super. 588, 704 (N.J. Super. Ct. App. Div. 1997) (rejecting plaintiff's argument that "township's authority to adopt or apply land use regulations to prohibit a private landing strip is preempted").

Plaintiff's remaining arguments are equally insufficiently pleaded. See Complaint ¶ 44. First, contrary to plaintiff's claims, the Avigation Law does not regulate Class B airspace. Indeed, it does not regulate air space at all. Rather, it prohibits UAVs from taking off from and landing in areas not approved by the City. For the reasons set forth above, this is a permissible exercise of the City's police powers and does not conflict with the federal regulatory scheme. . In contrast, in Singer, the ordinance at issue prohibited UAV flight below 400 feet absent prior permission of either the owner of the private property over which the drone was to fly or the town if the drone was to fly over municipal property. Singer, 284 F. Supp. 3d at 131. In finding that the ordinance at issue conflicted with the federal regulatory scheme, the Court determined that because the ordinance "reach[ed] into navigable airspace," the regulation of which was exclusively reserved to the federal government, a conflict existed. Id. Here, the Avigation Law in no way parallels the ordinance at issue in Singer. Significantly, the clear text of the Avigation Law makes clear that it does not regulate navigable airspace; rather, it regulates takeoff and landing sites for aircraft. Administrative Code § 10-126(c). After an aircraft is airborne in Class B navigable airspace, it is subject to the federal regulatory scheme, not the Avigation law. Accordingly, the complaint fails to plausibly allege a conflict between the Avigation Law's regulation of takeoff and landing sites and the federal regulatory scheme's regulation of navigable airspace.

Second, the Avigation Law does not conflict with the FAA's authority to grant waivers for UAV flight or remote pilot certifications.[3] It is clear from the text of the Avigation

---

[3] "A waiver is an official document issued by the FAA which approves certain operations of aircraft outside the limitations of a regulation." See https://www.faa.gov/uas/commercial_operators/part_107_waivers/ (last visited

Law that it does not impose any additional requirements upon UAV operators who have obtained a waiver or certification from the FAA. Nor does it prohibit a pilot who has obtained a waiver or certification from the FAA from operating a UAV. Instead, the Avigation Law merely regulates where a UAV may take off and land, which the waivers and certifications do not regulate, and no conflict exists. Conversely, in <u>Singer</u>, 284 F. Supp. 3d at 131, the ordinance at issue required that all UAV operators register their equipment with the municipality. In finding that this conflicted with the federal regulatory scheme, the Court determined that the" "FAA…explicitly has indicated its intent to be the exclusive regulatory authority for registration of pilotless aircraft". <u>Id</u>. As such, the ordinance attempted to regulate in an area exclusively reserved to the federal government and a conflict existed. Here, unlike <u>Singer</u>, the clear text of the Avigation Law demonstrates that it does not impose additional requirements or frustrate the federal regulatory scheme as it relates to waivers or airman certifications. Administrative Code § 10-126(c). Rather, it exclusively regulates takeoff and landing sites, which the federal regulatory scheme does not regulate. As such, no conflict exists between the Avigation Law and the federal regulatory scheme's exclusive control over the granting of waivers and airman certifications.

Finally, plaintiff's inclusion of <u>People v. Santoriello</u> in the pleading does not render the pleading of the preemption claim sufficient. 183 Misc. 2d 54, 56 (N.Y. Crim. Ct., 1999); Complaint ¶ 29. <u>Santoriello</u> did not evaluate the constitutionality of the Avigation Law provision at issue herein, Administrative Code § 10-126(c). <u>Id</u> at 60. Instead, it evaluated Administrative Code § 10-126(d)(1), which prohibits advertising in the form "of towing banners from or upon an

---

September 13, 2021). Specifically, waivers permit drone operators to deviate from certain rules in 14 C.F.R. part 107 "by demonstrating that they can still safely using alternative methods. Regarding remote pilot certifications, the FAA requires that those individuals who wish to fly UAVs under 14 C.F.R. part 107 obtain FAA certification in order to demonstrate that the prospective drone operator understands all regulations, operating requirements, and procedures for safely flying drones. See https://www.faa.gov/uas/commercial_operators/become_a_drone_pilot/ (last visited September 13, 2021).

aircraft over the limits of the city…" Id at 55. In finding that this provision was preempted under federal law, the Santoriello Court emphasized the fact that defendant therein "applied for and received a 'Certificate of Waiver or Authorization' from the FAA which allow[ed] him to operate a moored kite (para-sail) from a vessel for advertising purposes over the Hudson River, *inter alia*, up to proscribed altitude." Id at 60. Thus, the City ordinance at issue in Santoriello directly conflicted with the federal regulatory scheme. . In contrast, in People v. Santoriello, 180 Misc. 2d 533, 536 (N.Y. Crim. Ct., 1999), Administrative Code § 10-126(c) was actually evaluated to determine whether it conflicted with the federal regulatory scheme at issue therein. In finding that no conflict existed, the Court emphasized that because the waivers issued by the FAA did "not address takeoff or landing per se," no conflict existed between Administrative Code § 10-126(c) and FAA regulation. Here, the same result should be reached as the federal regulatory scheme at issue does not regulate take off and landings.

## B.  Plaintiff's First Amendment Claim Fails

### i.  Flying a UAV is not Inherently Expressive Conduct

Plaintiff also fails to make out a cognizable First Amendment claim. Plaintiff argues that as an aerial cinematography production company, it uses UAVs as a form of artistic expression and that Administrative Code § 10-126(c) operates as a complete injunction on its protected speech. Complaint ¶¶ 31, 48-49. However, plaintiff fails to plead any facts to support these claims. See generally Complaint. The activity regulated by Administrative Code § 10-126(c), the take-off and landing of UAVs in the City of New York, is not a recognized form of inherently expressive conduct subject to First Amendment protections. See Robar v. Vill. Of Potsdam Bd. Of Trs., 490 F. Supp. 3d 546, 560 (N.D.N.Y 2020); Fifth Ave. Presbyterian Church v. City of N.Y., 2004 U.S. Dist. LEXIS 22185 *35-37 (S.D.N.Y. Oct. 28, 2004). Plaintiff does not state any facts

demonstrating how its conduct of UAV use is inherently expressive, nor does plaintiff claim to have any intent through its UAV use to communicate any specific message. Additionally, plaintiff does not adequately plead how it uses UAVs in filming or how Administrative Code § 10-126(c) prevents it from doing so.

In determining whether conduct is sufficiently expressive to fall within the purview of the First Amendment, the relevant inquiry is whether an intent to convey a particularized message was present, and whether that message would be understood by those who viewed the conduct. Young v. N.Y.C. Transit Auth., 903 F.2d 146, 153 (2d Cir. 1990) (quoting Spence v. Washington, 418 U.S. 405, 410-11 (1974)). Unlike the conduct of flag burning discussed in Spence v. Washington, the Court in Young did not find the act of begging to be "inseparably intertwined with a particularized message…[because] most individuals who beg are not doing so to convey any social or political message." 903 F.2d at 153. In the instant case, since plaintiff makes no claims that its conduct of UAV use is intended to communicate any particularized political, social, or religious message, it is unable to argue that its conduct is "inseparably intertwined" with the intent to convey any such message. See id.

Nonetheless, even if plaintiff could have plead facts that evince an intent to communicate a specific message, there is no indication that plaintiff's message would have the likelihood to be easily understood by anyone who saw it flying a UAV. See Young, 903 F.2d at 153-154 (to the extent a beggar has "an intent to convey a particularized message" there is not a "great likelihood that the subway passengers who witness the conduct are able to discern what the particularized message might be."); Cf. Fifth Ave. Presbyterian Church, 2004 U.S. Dist. LEXIS 22185 *36-37 (by allowing homeless individuals to sleep on its steps, the Church was "engaged

in expressive conduct by communicating a highly particularized, easily understood, religious and political message regarding how homeless persons should be treated by society.").

UAVs may be used for various purposes: some are used by hobbyists, others are used in the course of business (e.g., to inspect building facades), while others may be used for surveillance purposes.[4] None of these uses are conveying any social or political message, but, to the extent someone flying a UAV has the intent to convey a particularized message, it is highly unlikely that their message would be clearly understood by those witnessing the conduct. Accordingly, any "expression" restricted by Administrative Code § 10-126(c) is not constitutionally protected.

ii.   The Appropriate Standard of Review is Intermediate Scrutiny

To the extent this Court determines that plaintiff has sufficiently plead that flying a UAV is expressive conduct or that it is necessary to plaintiff's cinematography, plaintiff has still failed to plead that the Avigation Law violates the First Amendment. When reviewing First Amendment challenges to restrictions on expressive activity, the appropriate standard by which to evaluate constitutionality turns on whether the challenged law is content-based or content-neutral. If the applicability of the law depends on the nature or content of what is expressed, strict scrutiny is required. If the law is content-neutral, imposing only incidental burdens on speech, the court applies an intermediate level of scrutiny. See Vincenty v. Bloomberg, 476 F.3d 74 (2d Cir. 2007); see also Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).

Plaintiff suggests that a heightened intermediate scrutiny is the appropriate standard of review (see ECF Doc. #12, Plaintiff's Response to Defendant's Pre-Motion Letter), but the cases cited in support of this proposition, Madsen v. Women's Health Ctr., 512 U.S. 753 (1994)

---

[4] See https://en.wikipedia.org/wiki/List_of_unmanned_aerial_vehicle_applications (last visited September 13, 2021).

and Schenck v. Pro-Choice Network of W. N.Y., 519 U.S. 357 (1997), do not involve review of content neutral ordinances. In Madsen, the court stated that heightened scrutiny was needed to evaluate content neutral *injunctions* that restricted speech, but "a content-neutral, generally applicable statute...would be assessed under the standard set forth in Ward v. Rock Against Racism, and similar cases." 512 U.S. at 764. Schenck relied on Madsen and applied the heightened standard to evaluate an *injunction* issued by a lower court restricting the expressive activities of anti-abortion protestors. 519 U.S. at 370-371. The instant action is a challenge to an ordinance, Administrative Code § 10-126(c), not an injunction, and applies to all UAVs without consideration of the content or basis of the use. Thus, the law is content-neutral, intermediate scrutiny is appropriate, and there is no need for heightened review.

### iii.    Admin. Code § 10-126(c) Withstands Intermediate Scrutiny

The Supreme Court has repeatedly held that the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647, (1981); see also Adderley v. Florida, 385 U.S. 39, 47-48 (1966); Cox v. Louisiana, 379 U.S. 536, 554 (1965); Poulos v. New Hampshire, 345 U.S. 395, 405 (1953). Generally, "a municipality may issue reasonable regulations governing the time, place, or manner of speech, without running afoul of the First Amendment" as long as the restrictions survive intermediate scrutiny. Ward, 491 U.S. at 802-03; see also Lusk v. Vill. of Cold Spring, 475 F.3d 480, 493 (2d Cir. 2007). Intermediate scrutiny requires the law or regulation be narrowly tailored to serve a significant government interest and leave open ample alternatives for communication. Lusk, 475 F.3d at 493 (internal quotes and cites omitted). If the law is narrowly tailored, "it will be sustained if 'it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the

13

suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Vincenty, 476 F.3d at 84 (quoting Turner Broad. Sys. v. FCC, 512 U.S. 622, 662 (June 27, 1994)).

Administrative Code § 10-126(c) does not ban all use of UAVs in New York City. Instead, the law regulates where UAVs can safely take off and land within City limits without consideration of the nature of the UAV use. As explained in Section A, iv., *supra*, the FAA has specifically recognized the appropriateness of local control on land use regulations, including takeoff and landing sites for aircraft. 81 Fed. Reg. 42063 § (III)(K)(6). In a densely populated city like New York which is known for its soaring skyscrapers and is surrounded by three international airports, it is necessary and logical for the City to designate specific takeoff and landing sites for UAVs in order to maintain the safety and security of the City. Therefore, the law's restrictions on take-offs and landings of UAVs outside of the designated areas is narrowly tailored to address the City's significant public safety interests. See Ward, 491 U.S. at 791 ("even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." (internal cites and quotes omitted)).

There are alternative avenues available to plaintiff for artistic expression through cinematography. While plaintiff may use UAVs in areas designated by the City, there are various other methods of aerial cinematography available for use throughout the City as well.[5] For instance, aerial or bird's eye shots can be filmed by helicopter, from the top of a building, or with

---

[5] See Mayor's Office of Media and Entertainment, https://www1.nyc.gov/site/mome/industries/transportation-air.page for a list of transportation options for aerial filming (last visited September 13, 2021).

the use of crane.[6] Importantly, the available alternatives do not have to "be perfect substitutes for those channels denied to plaintiffs by the regulation at hand." Mastrovincenzo v. City of New York, 435 F.3d 78, 101 (2d Cir. 2006). There is also no need for the regulation of the time, place, or manner of protected speech to be the least restrictive means of achieving the government's interests; indeed, the mere existence of a conceivably less burdensome alternative does not render the regulation invalid. Ward, 491 U.S. at 798; United States v. Albertini, 472 U.S. 675, 698 (1985). The Supreme Court has explicitly rejected any requirement to analyze alternatives to determine which is least restrictive. Regan v. Time, Inc., 468 U.S. 641, 657 (1984) (stating that "less-restrictive-alternative analysis … has never been a part of the inquiry into the validity of a time, place, and manner regulation."). Rather, a regulation is sufficiently narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799 (quoting United States v. Albertini, 422 U.S. 675, 689 (1985); see also Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

Accordingly, plaintiff's First Amendment claim must be dismissed.

---

[6] Id.; see also https://www1.nyc.gov/site/mome/industries/camera-grip-lighting.page which lists businesses that supply aerial lifts, cranes, and other equipment (last visited September 13, 2021).

## **CONCLUSION**

For the reasons set forth above, plaintiff Xizmo Media Productions LLC fails to

state a cause of action and the Court should dismiss this action.

Dated: New York, New York
      September 13, 2021

              GEORGIA M. PESTANA
              Corporation Counsel of the City of New York
              Attorney for Defendants
              100 Church Street
              New York, New York 10007

                /s/
              _____
              Darren Trotter
              Gati Dalal
              Assistant Corporation Counsels